A01A2007. EPPS v. THE STATE.
A01A2015. ANGULO v. THE STATE.
A01A2016. BRAYBOY v. THE STATE.
(555 SE2d 25)

PHIPPS, Judge.

William Epps, Rogelio Angulo, Dwayne Brayboy, and Fondel Barr were arrested by a drug task force conducting a reverse sting wherein undercover police officers pose as drug dealers, sell drugs to purchasers, and then arrest the purchasers for possession of the drugs).[1] The arrestees were charged with trafficking in cocaine and other offenses. Epps, Angulo, and Brayboy appeal their convictions of trafficking in cocaine. Because possession of cocaine is an essential element of trafficking in cocaine, and because law enforcement authorities arrested appellants before they acquired possession of the cocaine, we must reverse their convictions based on an insufficiency of supporting evidence. Remaining issues are moot.

Construed in a light most favorable to support the verdict, the evidence showed that a City of Doraville police sergeant was told by a confidential informant that a man later identified as Angulo wanted to purchase a kilogram of cocaine. The sergeant decided to conduct a reverse sting with the assistance of a DeKalb County drug task force. The sting was conducted at an apartment complex in Doraville where Brayboy resided. The informant met Angulo at the apartment complex entrance. They were driving their respective cars. The informant was in possession of a block of cocaine weighing almost 998 grams.

Epps and Barr later arrived in Epps's truck with the purchase money. After going to Brayboy's apartment, Epps and Angulo returned with Brayboy to the informant's car. Epps and Angulo went to the rear of the vehicle and asked to see the cocaine. The informant had put the cocaine on the backseat of his car, and he took it out and

---

[1] *Giraldo v. State*, 249 Ga. App. 178-179, n. 1 (547 SE2d 651) (2001).

showed it to Epps and Angulo. At Epps's request, the informant unsealed the cocaine. The informant also cut a piece out of it. Epps then bent down, smelled the cocaine, and took a piece of it to test at Brayboy's apartment.

After Epps, Angulo, and Brayboy went back to Brayboy's apartment and tested the cocaine, they returned to the area of the informant's car to make the purchase. Epps and Angulo approached the car while Brayboy remained in the background. Angulo placed the money in the backseat of the car. The informant, however, had put the cocaine in the trunk of his car at the direction of the police sergeant who wanted to hide the cocaine from the appellants because he was concerned they might try to steal it. Observing that the cocaine had been moved from its prior location, Angulo asked where it was. The informant asked where the money was. When Angulo told the informant the whereabouts of the money, the informant alerted task force officers by prearranged signal that the buy had been completed. The informant continued giving the signal while telling the appellants that the cocaine was in his trunk. When the informant opened the trunk, the officers converged on the scene and arrested Epps, Angulo, and Brayboy. As the trunk was opened, Epps and Angulo stood approximately three feet from the informant's car.

"The relevant element of trafficking in cocaine is knowing possession of 28 grams or more of cocaine. Possession may be joint or exclusive and actual or constructive."[2] " 'A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.' [Cits.]"[3] " 'If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.' "[4] "Spatial proximity alone is insufficient to prove joint constructive possession of contraband."[5]

The State argues that the evidence in this case supports a finding that when Epps inspected the cocaine and acquired actual possession of a piece of it, he and the other appellants, along with the informant, were in joint constructive possession of the entire block of cocaine. Alternatively, the State argues that once the appellants paid the purchase price for the cocaine, they obtained constructive posses-

---

[2] (Footnotes omitted.) *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000); see OCGA § 16-13-31 (a) (1).

[3] *Lockwood v. State*, 257 Ga. 796, 797-798 (364 SE2d 574) (1988).

[4] *Tamez v. State*, 148 Ga. App. 307, 308 (2) (251 SE2d 159) (1978).

[5] (Footnote omitted.) *Stevens*, supra.

sion of it as a result of their apparent ability to overpower the informant and take the cocaine from him.

We cannot agree with either of these arguments. The appellants could not have been in constructive possession of the entire kilogram of cocaine when Epps conducted his inspection, because they indisputably lacked the intention to exercise dominion or control over it until they had tested the sample. Upon tendering the purchase price to the informant, the appellants clearly possessed the intent to exercise control over all of the cocaine, but the evidence is insufficient to show that they ever acquired the power of control so as to give them constructive possession, as the informant hid the cocaine from them by placing it in his closed trunk until the police arrived to make the arrests. This is simply a case in which authorities conducting a sting arrested the subjects before they acquired possession of the drug and then obtained convictions against them for an offense which has possession of the drug as an element.[6] Applying the law to the facts as established by the evidence, we must reverse the convictions for trafficking in cocaine.

*Judgments reversed. Blackburn, C. J., Barnes and Miller, JJ., concur. Pope, P. J., Smith, P. J., and Mikell, J., dissent.*

SMITH, Presiding Judge, dissenting.

I respectfully dissent. Whether sufficient evidence was presented from which the jury could have convicted the defendants of the crime charged is a close question. But given the circumstances of this case, I believe the issue of whether the defendants had the ability to exercise control over the contraband, even though it was in the trunk of the informant's vehicle, was properly submitted to the jury and that evidence existed from which a rational trier of fact could have concluded that the defendants were in constructive possession of the cocaine.

I am authorized to state that Presiding Judge Pope and Judge Mikell join in this dissent.

DECIDED SEPTEMBER 25, 2001 — 

*Richard O. Allen*, for appellant (case no. A01A2007).
*Penn & Pate, Page A. Pate*, for appellant (case no. A01A2015).
*Bernard S. Brody*, for appellant (case no. A01A2016).

---

[6] Compare *Cody v. State*, 222 Ga. App. 468 (474 SE2d 669) (1996) (where defendants were convicted of trafficking in cocaine after being arrested during a reverse sting, and the evidence showed that actual possession of the cocaine was transferred to one of them before their arrest); *Heath v. State*, 240 Ga. App. 492 (522 SE2d 761) (1999) (where the police used counterfeit cocaine during a reverse sting, never allowing the defendant to hold it, and the defendant was convicted of criminal attempt to possess cocaine).

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Andrette Watson, Assistant District Attorneys*, for appellee.