## A00A1515. ROBINSON v. THE STATE.
(541 SE2d 660)

BLACKBURN, Presiding Judge.

Darryl Robinson appeals, following a jury trial, from his convictions of armed robbery, aggravated battery, and two counts of aggravated assault. Robinson contends that the evidence was insufficient to support the convictions. Robinson also contends that the trial court erred by: (1) finding that the State's explanation for striking a juror was gender-neutral; (2) limiting the scope of his examination into the details of the victim's prior convictions; (3) excluding Robinson's statement to an investigator; (4) admitting prior consistent statements of the victim; (5) failing to exclude a hearsay statement of Robinson's mother to an officer; (6) failing to charge the jury regarding the credibility and weight of the testimony of a witness who had not been sequestered; and (7) failing to merge the counts of aggravated assault and aggravated battery into the count of armed robbery. For the reasons which follow, we affirm.

1. Robinson argues that the evidence was insufficient to support his convictions for armed robbery, aggravated assault with intent to rob, and aggravated assault with a deadly weapon because his co-defendant, Charles Lee Morgan, Jr., was the one who wielded the gun during the robbery. Robinson also argues that the evidence was insufficient to support his conviction for aggravated battery because Morgan struck the victim and because the evidence regarding the number and severity of lacerations sustained by the victim was conflicting.

We have held:

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v.*

*Virginia.*[1]

(Punctuation omitted.) *Hagood v. State.*[2] Furthermore, although Robinson points to the conflicting testimony of various witnesses,

> [c]onflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. Furthermore, the testimony of a single witness is generally sufficient to establish a fact.

(Citations and punctuation omitted.) Id.

So viewed, the evidence here shows that Antwan Brown had gone to a friend's house for a haircut. When he pulled out his money to pay for the haircut, Robinson and Morgan, who were also at the house, saw that he was carrying a lot of cash. When Brown left the house, the co-defendant demanded his money at gunpoint. Although Brown attempted to return to the house, Robinson grabbed him and dragged him off the porch. As Morgan held the gun on Brown, Robinson searched through Brown's pockets, also demanding Brown's money. Then, Robinson held Brown while Morgan struck him in the head with the gun, which caused Brown to sustain three lacerations on his head. After taking Brown's money, Robinson and Morgan started to leave. When Brown tried to stop them, Morgan fired a shot at Brown.

This evidence was sufficient to support the jury's finding that Robinson was guilty, beyond a reasonable doubt of the offenses of armed robbery, aggravated battery, and two counts of aggravated assault. See *Jackson*, supra.

With regard to the armed robbery and assault convictions, "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person . . . by use of an offensive weapon." OCGA § 16-8-41 (a). To be convicted of aggravated assault, the evidence must show that the defendant assaulted: "(1) With intent to murder, to rape, or to rob; [or] (2) [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a).

Even though Robinson did not actually use a weapon here, Morgan's use of a weapon can be attributed to him because one who

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Hagood v. State*, 228 Ga. App. 693, 694 (2) (492 SE2d 606) (1997).

intentionally aids or abets the commission of a crime by another is a party to the crime and equally guilty with the principal. OCGA § 16-2-20 (b) (3). For example, in *Pryor v. State*,[3] the defendant remained in the car while his co-defendants robbed the victim at gunpoint. We held that the evidence supported the defendant's armed robbery conviction because he aided and abetted his co-defendants by driving with them to commit the robbery. Here, Robinson aided and abetted Morgan by grabbing the victim and dragging him off the porch, searching through the victim's pockets while Morgan held the gun on the victim, demanding his money, and holding the victim while Morgan struck him in the head with the gun.

With regard to the aggravated battery conviction, "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another . . . by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). As explained above, Robinson's argument that Morgan actually struck the victim is without merit because he held the victim while Morgan struck him.

Robinson's argument that the evidence regarding the number and severity of lacerations sustained by the victim was conflicting is equally unavailing because "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Hagood*, supra. Brown, the victim, testified that he sustained three lacerations as a result of being struck on the head with a gun by the co-defendant while Robinson held him. Brown also identified photographs of the lacerations. This evidence was sufficient to support the convictions.

2. Robinson argues that the trial court erred by determining that the State's explanation for striking a female juror (juror 43) was gender-neutral. This finding by the trial court is entitled to great deference and will be affirmed unless clearly erroneous. *Herrin v. State*;[4] *Gamble v. State*.[5] We find no error.

The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race. *Batson v. Kentucky*;[6] *J. E. B. v. Alabama*.[7] We review a claim that jury strikes were based on gender under the same standards applicable to race. *Jackson v. State*.[8] The party challenging the

---

[3] *Pryor v. State*, 179 Ga. App. 293 (346 SE2d 104) (1986).
[4] *Herrin v. State*, 221 Ga. App. 356 (471 SE2d 297) (1996).
[5] *Gamble v. State*, 257 Ga. 325, 326-327 (5) (357 SE2d 792) (1987).
[6] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[7] *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994).
[8] *Jackson v. State*, 220 Ga. App. 98 (469 SE2d 264) (1996).

strike must make a prima facie showing that the exercise of the peremptory strike was on the basis of gender. The burden then shifts to the party exercising the strike to articulate a gender-neutral explanation for striking the juror. "The explanation need not justify a challenge for cause, but it must be neutral, related to the case to be tried, and constitute a clear and reasonably specific legitimate reason." *Herrin*, supra at 357. Then, the trial court must determine whether the party challenging the strike has carried the burden of proving purposeful discrimination. *Tedder v. State*;[9] *Odom v. State*.[10]

During jury selection, Robinson challenged the State's use of its peremptory challenges, including a challenge to an alternate juror, to strike eight women. The trial court asked the State to articulate its reasons for having struck each of the eight women. The State complied. With respect to juror 43, the State asserted that the juror could not be impartial because she had a personal experience of being unduly blamed for having broken up a fight. The State reasoned that this experience was too close to the defense theory that Robinson had tried to break up the fight between Brown and Morgan and Robinson was wrongly accused of the crimes. The State informed the court that it struck a male juror for the same reason. After hearing the explanations, the trial court found that the State's reasons were gender-neutral. With respect to juror 43, the court noted that the State struck a similarly situated male.

Because the trial court ruled on the ultimate question of intentional discrimination, we focus our analysis there and find no clear error. See *Odom*, supra. The State's explanation was directly related to the case because juror 43 had experienced a situation similar to that which Robinson was articulating as a defense. Further, the State's reason was gender-neutral and, in fact, was also used to strike a male juror.

3. Robinson contends the trial court erred by restricting his ability to delve into the details of victim Brown's prior convictions after Brown attempted to rehabilitate his character by explaining that he had pled guilty pursuant to *North Carolina v. Alford*,[11] which allows him to plead guilty while maintaining his innocence. We have held:

> It is the duty of the trial court to control the trial of the case and to insure a fair trial to both sides. Sometimes this requires interference by the court with the conduct of counsel or with a witness in the trial. The trial judge has broad discretion in handling these matters and we are loath to

---

[9] *Tedder v. State*, 265 Ga. 900, 901 (2) (463 SE2d 697) (1995).
[10] *Odom v. State*, 241 Ga. App. 361-362 (2) (526 SE2d 646) (1999).
[11] *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).

interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or unfairness.

(Punctuation omitted.) *Najmaister v. State*.[12] The trial court did not abuse its discretion by limiting Robinson's examination of Brown.

A witness may be impeached by introducing a certified copy of a prior conviction. *Kimbrough v. State*.[13] In rebuttal of the fact of the conviction, the witness has the opportunity to explain the circumstances of the plea or conviction. *Stovall v. State*;[14] *Johnson v. Ray*;[15] see *Woods v. State*;[16] *Vincent v. State*.[17] A defendant cannot bolster his impeachment of a witness with facts underlying the witness's prior convictions if the witness has not attempted to rehabilitate his character. *Woods*, supra.

In the present case, Brown was impeached by certified copies of his convictions for aggravated child molestation and aggravated sodomy. After Brown attempted to rehabilitate his character by explaining that he had entered an *Alford* plea, counsel for Robinson asked that he be allowed to cross-examine Brown regarding what Brown was told about the charges he was facing, why he waived his right to a jury trial, and why he decided the plea was in his best interest. The trial court allowed the line of questioning, but would not permit defense counsel to ask Brown whether he pled guilty because his counsel told him that the children would be in court to testify.

The court allowed Robinson to call the assistant district attorney who prosecuted Brown to testify. The prosecutor testified that there were three victims, two girls (one age six) and a boy (age nine) and that all three would be witnesses at trial. After Robinson asked whether there were any other witnesses, the State objected that counsel was going into the facts of the case. Defense counsel, in the presence of the jury, responded that he was trying to establish that the State in Brown's case "was ready to prosecute, . . . ready to tell the jury about it, and this man made a plea that was in his best interest. [Brown] didn't want to face those people in the jury box." The court cautioned defense counsel, "I think that's already been established in your retort to the objection. Let's be careful, Mr. Bazemore." Robinson argues that the court's warning restricted his probing the details of Brown's conviction, thus preventing him from presenting his main defense, which was that the incident between co-defendant Morgan and Brown started because Brown attempted to

---

[12] *Najmaister v. State*, 196 Ga. App. 345, 347 (2) (396 SE2d 71) (1990).
[13] *Kimbrough v. State*, 254 Ga. 504, 505 (2) (330 SE2d 875) (1985).
[14] *Stovall v. State*, 169 Ga. App. 691, 692 (2) (314 SE2d 707) (1984).
[15] *Johnson v. Ray*, 206 Ga. App. 262, 263-264 (4) (424 SE2d 892) (1992).
[16] *Woods v. State*, 269 Ga. 60, 63 (4) (495 SE2d 282) (1998).
[17] *Vincent v. State*, 264 Ga. 234 (442 SE2d 748) (1994).

molest Morgan's sister.

We find that the trial court did not abuse its discretion because the presentation of a witness's prior convictions is allowed for impeachment purposes and should not be viewed as an independent avenue for presenting a defense. Thus, Robinson was allowed to present evidence regarding Brown's prior convictions in order to impeach Brown only after Brown had attempted to rehabilitate his character by testifying that he had entered an *Alford* plea. The trial court allowed Robinson to impeach this testimony adequately. Indeed, the jury heard the charges against Brown, the ages and names of the young victims, and that they would have testified against him had he not decided to plead guilty.

4. Robinson argues that the trial court erred by excluding statements he made to police because (1) the prosecutor argued that the statements were self-serving, but did not argue that the statements were hearsay and (2) the court excluded the statements without hearing a proffer of the statements and not all of the statements were self-serving. We find no error.

Robinson's first argument overemphasizes form over substance. Although the basis of an objection to self-serving testimony is hearsay, "[i]t is well-settled that self-serving statements made by the accused, either before or after the commission of the alleged offense, are inadmissible hearsay." *Nunez v. State.*[18]

With regard to Robinson's second argument, the State filed a motion in limine to exclude the statements. The trial court did not grant the State's motion, but instead took it under advisement. When the State renewed its motion at a sidebar during Robinson's cross-examination of the police officer, the court responded: "Until he says something that supposedly [Robinson] has said, I'll have to determine if it's self-serving. I don't think he's asked so far anything that's exculpatory." Thus, contrary to Robinson's assertion, the trial court did not make a wholesale ruling excluding Robinson's statements without first determining whether they were actually self-serving.

5. Robinson contends that the trial court erred by admitting, over his hearsay objection, the testimony of three witnesses regarding statements Brown made to the police shortly after the incident.[19] We find that to the extent the statements were inadmissible, their admission did not constitute reversible error.

"Prior consistent statements are admissible as substantive evidence when the veracity of the witness's trial testimony has been placed in issue at trial, the witness is present at trial, and the wit-

---

[18] *Nunez v. State*, 237 Ga. App. 808, 811 (4) (516 SE2d 357) (1999).

[19] Robinson challenges the admission of statements by witnesses Angela Hunter, Kenny Williams, and Detective Andre Jackson in separate enumerations of error.

ness is available for cross-examination." *Powell v. State*;[20] *Woodard v. State*.[21] In this regard, "a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." Id. at 320. "The erroneous admission of the witness's hearsay statements is only reversible if it appears likely that the hearsay contributed to the guilty verdict." Id. at 324 (4).

Three witnesses testified that Brown told the police that Robinson attacked and robbed him while he was at a house getting his hair cut. Although Brown was present at trial and, presumably, was available for cross-examination, we find no affirmative charges of recent fabrication, improper influence, or improper motive raised during cross-examination. Nonetheless, no reversible error occurred because it does not appear likely that the hearsay contributed to the guilty verdict. See *Woodard*, supra.

6. Robinson raises as error the trial court's denial of his motion to have a portion of Robinson's videotaped interview with a police detective redacted before being shown to the jury. Robinson contends that the videotape contains hearsay testimony of his mother that she did not want Robinson to take all of the blame because he did not have a gun. Robinson did not cite to any particular tape or where on the tape the statement might be found. Our independent review of the tapes did not reveal such a statement by the detective. Even assuming there was such a statement and error in the admission of the unredacted tape, we find it highly improbable that the alleged statement contributed to the verdict in light of the eyewitness testimony linking Robinson to the crime. Any alleged error was harmless. *Austin v. State*.[22]

7. Robinson contends that the trial court erred by failing to charge the jury on the weight and credibility of the testimony of a witness who has not been sequestered, remaining in the courtroom during opening statements and during the presentation of the evidence. Robinson, however, has not cited to the record to support his allegation that Jackson was in the courtroom, and our review of the record finds no indication that Jackson was in the courtroom or that Robinson objected to his presence in the courtroom. "On appeal, [Robinson] has the burden 'to affirmatively show asserted error by the record. Having failed to demonstrate support in the record for this enumeration, we find no error.'" *Sirmans v. State*.[23]

---

[20] *Powell v. State*, 271 Ga. 575, 576 (2) (522 SE2d 656) (1999).

[21] *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998).

[22] *Austin v. State*, 238 Ga. App. 440 (518 SE2d 918) (1999).

[23] *Sirmans v. State*, 244 Ga. App. 252, 256 (4) (534 SE2d 862) (2000).

Moreover, even assuming Jackson was present in the courtroom, the trial court did not err because Robinson did not request such a charge.

> When the rule of sequestration is violated, the violation goes to the credibility rather than the admissibility of the witness' testimony. A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness.

(Citations omitted.) *Johnson v. State*.[24]

8. Robinson argues that the trial court erred by failing to merge the aggravated assault counts[25] with the aggravated battery count into the count of armed robbery. We disagree.

OCGA § 16-1-7 (a) limits the number of convictions and punishment imposed for the same criminal conduct:

> When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

Id.

The offenses herein do not merge as a matter of law. See *Rooks v. State*[26] (aggravated assault and armed robbery do not merge as a matter of law); *Keaton v. State*[27] (aggravated battery and armed robbery do not merge as a matter of law); *Malone v. State*[28] (aggravated battery and aggravated assault do not merge as a matter of law). Thus, we must consider whether the offenses merge as a matter of fact. *Reeves v. State*.[29] " 'The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. . . . However, if the same facts are used to prove the different offenses, the different crimes merge.' " Id. See

---

[24] *Johnson v. State*, 258 Ga. 856, 857-858 (376 SE2d 356) (1989).

[25] Robinson was convicted of aggravated assault with intent to rob (Count 2 of the indictment) and aggravated assault with a deadly weapon (Count 3 of the indictment). The trial court merged Count 2 into Count 3 for sentencing.

[26] *Rooks v. State*, 238 Ga. App. 177, 179-180 (2) (518 SE2d 179) (1999).

[27] *Keaton v. State*, 193 Ga. App. 603 (388 SE2d 737) (1989).

[28] *Malone v. State*, 226 Ga. App. 185 (486 SE2d 57) (1997).

[29] *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

*Clay v. State*[30] (no merger when victim testified to sequential crimes).

In the present case, Robinson was convicted of aggravated assault with a deadly weapon, OCGA § 16-5-21 (a). The evidence supporting the conviction was the testimony that Robinson and Morgan fired the gun at Brown when he started to follow them after the robbery was completed. Robinson was convicted of aggravated battery, OCGA § 16-5-24. The evidence supporting this conviction was the testimony that Robinson beat Brown about the head causing severe lacerations which required medical attention. Robinson was also convicted of armed robbery, OCGA § 16-8-41 (a). The evidence supporting this conviction was that Robinson held Brown, demanded money, and searched Brown's pockets while Morgan pointed a gun at Brown. Because the underlying facts used to prove each offense are different, the offenses do not merge as a matter of fact. The trial court did not err.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED OCTOBER 31, 2000 —

*Emory B. Bazemore*, for appellant.
*Spencer Lawton, Jr., District Attorney, Margaret E. Heap, Assistant District Attorney*, for appellee.

